**UNITED STATES of America**

v.

**Alvin A. BECKWITH, Jr., A/K/A Alvin A. Beckwith, Appellant.**

**No. 74–1592.**

United States Court of Appeals, District of Columbia Circuit.

Jan. 22, 1975.

Rehearing Denied March 3, 1975.

Certiorari Granted June 16, 1975.

See 95 S.Ct. 2627.

John G. Gill, Jr., Washington, D. C., for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, Barry W. Levine and Raymond J. Coughlan, Jr., Asst. U. S. Attys., were on the brief for appellee.

Before BAZELON, Chief Judge, and TAMM and ROBB, Circuit Judges.

BAZELON, Chief Judge:

Agents of the Intelligence Division of the Internal Revenue Service visited appellant Alvin Beckwith at the home of a friend on August 2, 1972. On the basis of information obtained in that visit and of other information Beckwith was indicted and subsequently convicted on March 21, 1974, of one count of attempting to evade or defeat federal income taxation.[1] On October 4, 1973, previous to this conviction, Beckwith moved to suppress all the statements made during the course of the interview conducted at his friend's home in August, 1972, charging that the interview violated his rights

---

1. *See* 26 U.S.C. § 7201 (1970). Beckwith was indicted for two counts, sent to trial on the first and after conviction the second count was dropped.

guaranteed by the Fifth Amendment to the Constitution. In particular, he alleged that since the Intelligence Division had singled him out for prosecution on the basis of his alleged gambling activities prior to the interview, the interview was in its nature coercive and tended to compel him to incriminate himself. The District Court rejected this argument and Beckwith now appeals from his conviction, arguing that the District Court was mistaken in this respect. We affirm.

▮▮ Beckwith's argument is based upon Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) as that case was applied to criminal tax investigations in Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). However, those cases involved police interrogation in so-called "custodial" circumstances. Their reasoning is based in crucial part on this fact[2] and cases following upon those seminal decisions have limited their principle to such "custodial" circumstances.[3] Beckwith does not and could not reasonably assert that his interrogation was in custodial circumstances. While the meaning of "custodial" circumstances can include interrogation at a private home,[4] it does not always. Rather the test is whether the suspect "has been taken into custody or otherwise deprived of his freedom in any significant way."[5] Here Beckwith was neither arrested nor detained against his will. He was not subject to formal interrogation before a grand jury. The record reflects no use of any police interrogation techniques or any sort of browbeating. He was free to leave at any time and in fact was out of the agents' presence more than once. Indeed, one of Beckwith's complaints is that the meeting was so friendly that he was deceived into believing that he was not incriminating himself.

▮▮ The major thrust of Beckwith's argument is that the principle of Miranda and Mathis should be extended to cover interrogation in non-custodial circumstances after a police investigation has focused on the suspect. We are not impressed with this argument in the abstract nor as applied to the particular facts of Beckwith's interrogation. His interview had none of the indicia of coercion that motivated the Miranda scrutiny of investigative methods and thus it cannot be seriously argued that Beckwith was "compelled" to answer any questions. Furthermore, the agents did give Beckwith a modified Miranda warning which while not in full compliance with Miranda does give the suspect some notice that his statements might be used against him.[6] The extent to which

---

2. See 384 U.S. at 444–450, 86 S.Ct. 1602.

3. See Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); Hoffa v. United States, 385 U.S. 293, 304, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); United States v. Scully, 415 F.2d 680 (2d Cir. 1969); cf. Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). See also the reasoning of United States v. Stamp, 147 U.S.App.D.C. 340, 458 F.2d 759 (1971), cert. denied, 406 U.S. 975, 92 S.Ct. 2424, 32 L.Ed.2d 675 (1972); United States v. Robinson, 142 U.S. App.D.C. 43, 439 F.2d 553 (1970); United States v. Wong, No. 74–1636 (9th Cir. Sept. 23, 1974) (coercion in grand jury interrogation). This has been repeatedly emphasized in tax investigation cases. See, e. g., United States v. Robson, 477 F.2d 13 (9th Cir. 1973); United States v. Engle, 458 F.2d 1017 (8th Cir.), cert. denied, 409 U.S. 875, 93 S.Ct. 122, 34 L.Ed.2d 127 (1972); United States v. Jaskiewicz, 433 F.2d 415 (3d Cir. 1970), cert. denied, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971);

United States v. Squeri, 398 F.2d 785 (2d Cir. 1968).

4. Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969).

5. Miranda v. Arizona, 384 U.S. 436, 477, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. The following warning was given:

Under the Fifth Amendment to the Constitution of the United States, I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything which you say and any information which you submit may be used against you in any criminal proceeding which may be undertaken. I advise you further that you may, if you wish, seek the assistance of an attorney before responding.

such a warning must be given is not implicated in this case. Beckwith's argument apparently confuses the requisites of *compulsion* which bring to bear Fifth Amendment interests with the requisites of a *waiver* of Fifth Amendment rights once those rights attach.[7] The fact that a statement might be made in such a manner as to raise doubts that it constitutes a voluntary and intelligent waiver of the right to counsel and the right to remain silent does not necessarily mean that it was coerced or compelled within the intendment of the Self-Incrimination clause. Therein lies Beckwith's error. In *Miranda* and *Mathis* the Court found that custodial interrogations were inherently coercive and statements made therein necessarily compelled. Once having made that judgment, it followed inexorably that only a complete waiver of the Fifth Amendment and Sixth Amendment rights during interrogation would cleanse such statements from the taint of compulsion. But Beckwith's statements need not be found to be a waiver since no right had attached which he was in a position to waive.[8]

■ It follows from the preceding discussion that the proper inquiry is not whether Beckwith waived anything but whether his statements to the agents were voluntary. We find that they are. There is no claim that Beckwith's mental condition or education were so limited that he was particularly susceptible to interrogation. Furthermore, a modified warning was given, no unusual interrogation techniques were employed and the agents did not, contrary to Beckwith's claim, mislead him as to their pur-

pose in interrogating him. The entire interview was free of coercion[9] and it follows that the District Court properly refused to suppress Beckwith's statements. Beckwith's conviction is, therefore,

Affirmed.

7. *Cf.* Michigan v. Tucker, 417 U.S. 433, 444, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

8. *Cf.* United States v. Stamp, 147 U.S.App. D.C. 340, 458 F.2d 759, 780–781 (1971), cert. denied, 406 U.S. 975, 92 S.Ct. 2424, 32 L.Ed.2d 675 (1972). The only case supporting Beckwith's argument is United States v. Dickerson, 413 F.2d 1111 (7th Cir. 1969). That case might be distinguished since no warnings whatsoever were given and the court might well have been simply too broad in its remedial assertion that the full panoply of *Miranda* rights attached in a noncustodial interroga-

tion. In any event, we are not impressed with the assertion that Beckwith's interrogation was coercive within the intendment of *Miranda* whatever may have been the factual situation in *Dickerson*.

9. *See* Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); United States v. Stamp, 147 U.S.App.D.C. 340, 458 F.2d 759 (1971), cert. denied, 406 U.S. 975, 92 S.Ct. 2424, 32 L.Ed.2d 675 (1972); United States v. Robinson, 142 U.S.App.D.C. 43, 439 F.2d 553 (1970); United States v. Jaskiewicz, 433 F.2d 415 (3d Cir. 1970) and authorities cited.